## DICKSON v. GOURDIN.

1. In action against the administrator of a surety on a bond, evidence by others of acts of the surety tending to show that the surety had forgotten all about the bond and his liability thereon is incompetent, because if he had so forgotten, it could not affect his liability, and because the testimony was negative in character and, in part, only the opinion of witnesses.

2. *Dickson* v. *Gourdin* (26 S. C., 391), stated, and shown to have been decided without regard to the surety's knowledge of his liability, or of the payments made by the principal on the bond.

3. Prior to the code there was no limitation to an action on a sealed

instrument, and therefore the legal liability of both principal and surety continued indefinitely; the court, however, would presume payment from lapse of time, unless such presumption was rebutted. But in actions on simple contracts, the legal liability terminated by force of the statute at the expiration of the time limited for bringing action, and part payment could not operate to extend that time on the original contract, but only to imply as of that date a new contract to pay the balance due. This case distinguished from *Walters* v. *Kraft*, 23 S. C., 583, and that case stated.

4. As payments by an obligor on a joint bond enure to the benefit of his co-obligors, such community of interest operates to make them agents for each other to the extent that payments by one will be admissions by all.

5. But as death severs this agency, payments made by a surviving obligor will not operate as admissions by the estate of the deceased obligor. This case distinguished from *Shubrick* v. *Adams*, 20 S. C., 51.

Before FRASER, J., Charleston, June, 1887.

The Circuit decree in this case was as follows:

This case, so far as it affects the defendants as executors of Henry Gourdin, has been heard by me, by consent, without a jury. It is an action on a bond of R. N. Gourdin, as principal, and Henry Gourdin, as surety, conditioned to pay $760, and bearing date April 27, 1854. All the interest has been paid by R. N. Gourdin up to April 27, 1884. This interest was paid by checks of a firm of which R. N. Gourdin and Henry Gourdin were members, which checks were charged on the books of the firm to R. N. Gourdin (and within the knowledge of Henry Gourdin). No payments were made by Henry Gourdin personally, unless the above be such. Both these parties, up to the death of Henry Gourdin, were in good credit.

The testimony of H. W. Frost, Edwin Frost, Louis G. Young, and Henry E. Young, taken by me, subject to exception, shows that Henry Gourdin acted in reference to his own affairs as if the existence of this bond and his liability on it had entirely escaped his memory. I do not regard this as competent testimony, as the fact, if admitted, cannot affect the liability of Henry Gourdin. I must conform to the doctrine laid down by the Supreme Court in this and another case, and hold that the payments made by R. N. Gourdin, as principal, are sufficient to prevent the pre-

sumption of payment which would otherwise have arisen as to Henry Gourdin from the fact that full thirty years had elapsed from the maturity of this bond before the commencement of this action.

It is therefore ordered, that plaintiff have judgment, to be entered up in the usual way, against the defendants as executors of Henry Gourdin, deceased, for nine hundred and fifty-eight dollars and eighty cents, the amount of debt and interest, and for the costs of this action. The said Henry E. Young to have the right hereafter, on proper proceedings, to set up the plea of *plene administravit*, and establish the same if entitled thereto, if personal claim shall be made against him. This reservation not to suspend the regular execution of the above judgment.

The defendants appealed on the following grounds:

1. Because the presiding judge erred in holding the testimony of the Frosts and Youngs incompetent.

2. Because he erred in holding that the payments of interest by R. N. Gourdin prevented the presumption of payment arising from the lapse of more than twenty years since the bond fell due, sufficient to prevent the presumption of payment which would otherwise have arisen in favor of the estate of Henry Gourdin.

3. Because he erred in holding that the decree of the Supreme Court in this case bound him to give judgment against the estate of Henry Gourdin, the former decree being based on the supposed fact that Henry Gourdin knew all the time he was a surety on this bond, whereas the testimony in the present cause shows that this was a mistake, and that the fact had entirely escaped the memory of both H. and R. N. Gourdin.

4. Because Henry Gourdin was a surety on this bond, and his liability thereon could not by the act of the principal, R. N. Gourdin, be extended beyond the period of twenty years after the bond fell due.

*Mr. H. E. Young*, for appellant.

*Messrs. Miles & Cheves*, contra.

October 9, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER.    This is the second appeal in this case,
and for a full statement of the facts, reference may be had to the
case as reported in 2 S. E. Rep., 303, as well as in 26 S. C.,
391.    It is sufficient now to state that the action was on a joint
and several bond, on which Robert N. Gourdin was principal and
Henry Gourdin was surety, which became payable on the 27th
of April, 1857, and that suit was commenced on the 12th of
April, 1885.    The interest on the bond, however, was regularly
paid up to the 27th day of April, 1884, which interest, as appears
from the statement of facts agreed upon, "was paid by the checks
of the firm of Gourdin, Matthiessen & Co., and charged to R. N.
Gourdin, entered and appearing on their books (and within the
knowledge of H. Gourdin, a partner)."    There was, however,
no payment ever in fact made by H. Gourdin personally, "unless
the above be such."

The real question is as to the effect of these payments: whether
they were sufficient to rebut the presumption of payment of the
bond arising from lapse of time, so far as H. Gourdin or his
estate is concerned.    At the last trial appellants offered certain
additional testimony for the purpose of showing that H. Gourdin
acted as if the existence of this bond and his liability thereon had
entirely escaped his memory.    The case was heard by Judge
Fraser, by consent, without a jury, who held that the additional
testimony which had been taken subject to exception, was incom-
petent, as the fact it was intended to establish, if admitted, could
not affect the liability of Henry Gourdin, and in conformity to
the former decision of this court, he rendered judgment against
the executors of Henry Gourdin for the balance due on the bond,
a judgment by default having been rendered at the former trial
against the other defendant, Robert N. Gourdin.

The executors appeal upon the several grounds set out in the
record.    The first assigns error in holding that the testimony
above referred to as additional testimony was incompetent.    There
was clearly no error in this, not only for the reason assigned by
the Circuit Judge, but also because it was negative in its charac-
ter and did not tend to establish the fact proposed to be estab-
lished, and a portion of it was nothing more than an expression of
the belief of the witnesses.    Five witnesses were examined, and

assuming that all of them were well acquainted with the private affairs of Mr. Henry Gourdin, what does their testimony amount to ?   The first witness said: "I have no recollection of ever having heard Mr. Henry Gourdin's name mentioned in connection with the bond."   The second: "I did not know that Mr. Henry Gourdin was associated with the bond."   The third : "I have never known, and till the past few months have not heard, of Mr. H. Gourdin's being on a bond of Mr. Robert N. Gourdin." The fourth, speaking of Mr. H. Gourdin: "Not more than a year or two before his death he gave me a full statement of his debts and assets.   He didn't put down the bond of R. N. Gourdin to O'Hear as one of his debts.   I am confident that he was ignorant that he was on the bond."   The fifth witness, Mr. R. N. Gourdin himself, said: "It had escaped my memory that Mr. Henry Gourdin was on the bond.   In all my conversations with him on the subject of the bond, it was spoken of as my bond.   I am confident that it had escaped his memory as absolutely as it had mine."

But even assuming that this testimony was sufficient to establish the fact that Mr. Henry Gourdin had entirely forgotten that his name was on the bond, we are at a loss to perceive its pertinency to the issue involved in this case.   To use the apt and expressive language of the counsel for respondent: "Legal liability cannot be made to depend upon the memory of the debtor, nor can his forgetfulness discharge the debt."

It is contended, however, that the Circuit Judge erred in holding that, even conceding the fact to be what the proposed testimony was designed to establish, he was bound to render judgment against the executors under the former decision in this case. This position is based upon the unfounded assumption that the former decision of this court rested upon the fact that H. Gourdin knew all the time he was a surety on the bond.   It is difficult to understand how such a view could be taken of that decision.   On the contrary, it is manifest from the most casual reading of that opinion that it rests upon the legal proposition that payments by the principal upon a joint and several bond operate to rebut the presumption which arises after the lapse of twenty years from the maturity of the bond that it has been paid,

as to the surety as well as the principal, and it is only towards the close of the opinion that anything is said in regard to the admissions of one being, in fact, the admissions of the other, because probably known to and acquiesced in by the other.

But the language in which this is said shows clearly that the court did not rest its decision upon any such ground. "The case at bar seems to be one in which it could almost be said that in fact, as well as in law, the admissions of one were the admissions of the other;" and then follows a statement of the circumstances pointing to such a conclusion. Now, the use of the word "*almost*" shows clearly that the court did not intend, and could not properly be understood to have intended, to rest its conclusion upon a fact of which it could only be said that it·was *almost* established. Then, too, the expression, "that in fact, *as well as in law*, the admissions of one were the admissions of the other," manifestly shows that the court, after having established the legal proposition that a payment by one of two joint obligors on a bond rebuts the presumption arising from lapse of time as to both, merely added that this legal conclusion upon which the decision really rested was, in all probability, in accordance with the actual fact.

If, then, the additional testimony offered at the last trial was properly excluded, as we think it was, then it is plain that, under the principle of *res adjudicata*, the appellants would be concluded; for it is conceded that the second trial was upon the same statement of facts agreed upon at the first trial, and even if there was any error in the former judgment of this court, such error could only be rectified by an application for a rehearing or review in the proper form. But we are unwilling to rest our judgment on that ground, and, on the contrary, rest it upon the ground that the legal proposition upon which the former decision was based was right.

The whole argument of the counsel for appellants, as it seems to us, rests upon a failure to observe the broad distinction which exists between the two defences of payment and the statute of limitations. They rest upon entirely different and distinct principles, and are presented by different and distinct pleas, and to ignore these distinctions necessarily leads to confusion and error.

Prior to the code the statute of limitations had no application

whatever to a sealed instrument for the payment of money, while it did apply to a simple contract. There was, therefore, no limitation of time to the right of action on a bond, while there was such a limitation to the right of action on a simple contract. From this it followed necessarily that the legal liability of the obligor on a bond continued indefinitely, without limit as to time, while the legal liability of the maker of a promissory note terminated with the expiration of the statutory period; and from this it followed, with equal necessity, that lapse of time of itself merely, constituted no defence whatever to an action on a bond, except as it afforded a presumption that the bond was paid, while it did constitute a complete defence, of itself merely, to an action on a promissory note without any regard whatever to the question of payment. Hence when an action is brought on a bond, and lapse of time is relied on as a defence, the inquiry is totally different from what it would be in an action on a promissory note. In the former the question is whether a sufficient time has elapsed to afford a presumption of payment, and if so, whether there is anything to rebut that presumption, while in the latter the only question is, whether the time fixed by the statute has expired, without any inquiry as to the presumption of payment or whether such presumption is rebutted; for if such time has expired before the commencement of the action, then, under the express terms of the statute, the right of action on the note is forever barred, and if there has been any subsequent promise or acknowledgment, from which a promise might be implied, such subsequent promise constitutes the cause of action, and not that contained in the note.

Counsel for appellants denies the proposition that in such case the action must be upon the subsequent promise and not upon the original note, and claims that there is no authority for the proposition which we have laid down. In view of the distinct declaration to the contrary by O'Neall, J., in *Reigne* v. *Desportes* (Dud., 124), and by Wardlaw, J., in *Smith* v. *Caldwell* (15 Rich., 373), followed by the cases of *Walters* v. *Kraft* (23 S. C., 580), and *Colvin* v. *Phillips* (25 *Id.*, 234), it is difficult to understand how such a claim can be made. Indeed, the express terms of the statute itself would seem to be quite sufficient authority for

the proposition which we have laid down; for it declares that actions of the character referred to "*shall* be commenced * * * within four years next after the cause of such actions or suits, *and not after*." (Italics ours.) This is precisely equivalent to saying that actions shall not be brought after four years have expired from the accrual of the cause of action. Hence the statute itself forbids any action on a promissory note, unless it is commenced within four years after its maturity, and if there has been any subsequent promise to pay such note, such subsequent promise must necessarily be the only cause of action.

It is true that this distinction was lost sight of under the former system of pleading, for, as explained by O'Neall, J., and by Wardlaw, J., in the cases above cited, under the general counts in declaration in assumpsit it was altogether unimportant; but, as Judge O'Neall says, it led to "many loose expressions" in the cases, indicating that the subsequent promise revived and renewed the original cause of action, whereas, without abrogating the statute, this was impossible, and the true theory was that the subsequent promise itself constituted a new cause of action, and not that the original cause of action was revived or renewed. But inasmuch as the statute of limitations had no application to actions on specialties, this doctrine could not be applied to an action on a bond, and in such a case the cause of action is always the same. There is nothing to forbid the right of action on a bond after the lapse of twenty years, but such a lapse of time only operates as a defence to an admitted right of action. The question in such a case is, not whether the original obligation has been revived or renewed, or whether any new obligation has been incurred, but the inquiry is whether the original obligation has been discharged by the presumption of payment arising from lapse of time, and whether such presumption has been rebutted.

The extent, as to time, of the *legal* obligation which one assumes when he signs a promissory note, is very different from that which he assumes when he signs a bond. In the former case the *legal* obligation terminates with the expiration of the statutory period, because the statute expressly forbids the enforcement of such obligation after that time. But not so with a bond; for, as the statute does not apply, there is nothing to limit

the extent, as to time, of the legal obligation, and hence it continues until it is discharged by payment either actual or presumed.

Keeping in mind these views, it is very obvious that there is no conflict whatever between the former decision in this case and *Walters* v. *Kraft, supra,* but that the two cases rest upon totally distinct and different well settled principles. In that case the question arose under the statute of limitations, and it was decided upon principles applicable to that statute and its proper construction. In this case the statute of limitations is, confessedly, inapplicable, and therefore it cannot be decided upon the same principles which governed in that case. Here the question is, whether a payment made by the principal obligor on a bond during the life-time of the surety, a joint obligor, and within twenty years before the commencement of the action, rebuts the presumption arising from lapse of time that the bond is paid. It is admitted· that, so far as the principal debtor is concerned, the payment does rebut the presumption, and the only contest is as to whether the presumption is rebutted as to the surety. Considering that the sole question is one of fact—whether the bond has been paid—it is difficult to understand how it can be said that the bond is paid as to one, but not as to the other, for payment by either ought, it seems, to operate as satisfaction. as to both. Now, in a case under the statute of limitations no such difficulty can arise, for when the statutory period has expired, the right of action on the original contract is, by the express terms of the statute, barred as to all of the parties, and if there is any liability at all it must rest upon the new promise implied from a payment on the original contract, and such new promise can only bind those who are parties to it.

But, in addition to this, there can be no doubt that a payment on a bond is such a fact as will be sufficient to rebut the presumption arising from lapse of time; and if such payment be made by one of several joint obligors, it enures to the benefit of all, and .is regarded as the act of all. They all have a common interest that the payment should be made, and they are all, therefore, bound by it. But their community of interest extends no further than the making of the payment, which is sufficient of itself to rebut the presumption arising from lapse of time. Hence,

where one of several joint obligors makes a part payment on a bond, he acts as the agent of his co-obligors, but his agency does not extend far enough to enable him to make a new contract for his co-obligors.[1]

Again, it is contended that the former decision in this case is in conflict with our decision in *Shubrick* v. *Adams*, 20 S. C., 49. It seems to us, however, that the "single difference" admitted to exist between the two cases is striking, and shows conclusively that there is no conflict.   In *Shubrick* v. *Adams* the action was not commenced against Adams as administratrix of Gatewood until more than twenty years after his death; and as his death severed the obligation, or, to speak more accurately, terminated the relation of agency previously existing between him and his original co-obligor, Geddings, payments by the latter after Gatewood's death could not affect his estate, and hence there was nothing to rebut the presumption arising from the lapse of the twenty years.   Here, however, the action was commenced within six years after the death of Henry Gourdin, and several partial payments had been made on the bond by his co-obligor *during his life-time* (and therefore before the obligation was severed by his death, or the relation of agency had terminated), and within a period of much less than twenty years before the commencement of the action; and such payments, under the principles hereinbefore laid down, were clearly sufficient to rebut the presumption arising from lapse of time, that the bond had been paid in full.   In *Shubrick* v. *Adams*, the partial payments relied on to rebut the presumption were made *after the death* of Gatewood, and therefore could not affect either him or his estate; while here, the partial payments relied on for the same purpose were made *before the death* of Henry Gourdin, and therefore did affect him. This wide difference in the facts is amply sufficient to account for the difference in the result.

It is also contended by counsel for appellants in his printed argument, that the court held in *Walters* v. *Kraft*, "that when a note falls due, the joint obligation is severed, and payments by one joint contractor do not keep the note alive as to his other co-

[1] See *Whitcomb* v. *Whiting*, Doug., 652; 1 *Sm. Lead. Cas.*, *319–*324; *Bowdre* v. *Hampton*, 6 Rich., 219.—REPORTER.

contractors," and that the principle upon which that case rests is, "that in all joint obligations to pay money, the joint obligation ceases as soon as the obligation falls due." After a very careful examination of that case, we must confess that we are unable to find a single expression, or even a single word, which gives countenance to the idea, "that when a note *falls due*, the joint obligation is severed," or that the case rests upon the principle, "that in all joint obligations to pay money, the joint obligation ceases as soon as the obligation *falls due*" ; and we may add, that we know of no other case which recognizes any such principle. Indeed, if such a principle should be recognized, then it would follow necessarily that a joint action could never be maintained upon a joint contract; for it is quite clear that, except in the cases specially provided for by statute, no action of any kind, either joint or several, can be commenced upon a note until it *falls due* ; and if the joint obligation is *then* severed, it would follow inevitably that no joint action could ever be brought upon a joint note.

We must suppose, therefore, that what counsel really intended to say was that the court held in *Walters* v. *Kraft*, that when the *statutory period applicable to a joint note has expired*, the joint obligation is severed, and that the case rests upon the principle that in all joint obligations to pay money, the joint obligation ceases as soon as the statutory period applicable to such obligation expires. But from what we have said above, it is quite clear that the case of *Walters* v. *Kraft* rests upon no such principle ; and, in fact, nothing is said in the opinion about the severance of the joint obligation. On the contrary, that case rests upon the express terms of the statute of limitations, as interpreted by the later decisions of our courts, whereby it is declared that, after the statutory period has expired, no action can be maintained on the contract evidenced *by the note* against *any* of the parties to it; and if any action can be maintained at all, it must be on the new contract evidenced by the *subsequent promise*, either express or implied, and, of course, no one can be made liable upon such new contract except one who is a party to it. The case could not possibly have been rested upon the ground, that, after the expiration of the statutory period, the original

joint obligation evidenced by the note was *severed*, for the theory upon which it proceeded was that, after the expiration of that period, the original obligation was absolutely gone as to *all* of the parties to it, because when the right of action to enforce an obligation is destroyed, there can be no longer any *legal* liability.

The following language, extracted from the opinion in *Walters v. Kraft*, shows clearly that this court then recognized and pointed out the distinction between the principle upon which that case rested and the principle applied to this case: "This notion, that one of several joint debtors may, by his own act, without the consent of the others, defeat the operation of the statute of limitations upon the original contract, manifestly rests upon what is now conceded, and we believe universally conceded, to be an erroneous view of the statute. As long as it was held that the statute operated 'by raising a presumption of payment,' and not 'by creating a legal bar to the action,' it was very natural that anything which went to rebut that presumption should affect all the parties to the contract alike, and hence any act of any one of those parties tending to show that the debt was not in fact paid, was held sufficient to defeat the plea of the statute, which was then, in effect, a plea of payment, inasmuch as it was assumed that motives of self-interest would deter every one of the parties to the contract from any act or omission which would show that the debt was not paid, if, in fact, it was paid."

It is quite clear from what has already been said, that the fourth ground of appeal cannot be sustained. For, so far as this question is concerned, H. Gourdin, though a surety on the bond, stands in the same relation to the obligee as his principal. It is an entire mistake to assume that his liability terminated with the expiration of twenty years from the time the bond fell due. On the contrary, as we have shown, his liability continued indefinitely as to time, until it was shown that the bond was paid.

In deference to the zeal and earnestness of the counsel for appellants, and his manifest confidence in the view for which he contends, we have extended these remarks to a much greater length than would otherwise have been deemed necessary or even proper.

It is scarcely necessary for us to add that inasmuch as the

cause of action in this case accrued prior to the adoption of the code of procedure, we have considered the questions involved under the old law, and have not deemed it necessary to advert to the changes made in the statute of limitations by the code.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.